# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SHAWN MOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2019-0229-MTZ |
| | ) | |
| DIVISION OF STATE POLICE, | ) | |
| DEPARTMENT OF SAFETY AND | ) | |
| HOMELAND SECURITY of the | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: March 17, 2022
Date Decided: May 31, 2022

Stephani J. Ballard, LAW OFFICES OF STEPHANI J. BALLARD, LLC, Wilmington, Delaware; *Attorney for Plaintiff Shawn Mock.*

Joseph C. Handlon, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware; *Attorney for Defendant Division of State Police, Department of Safety and Homeland Security of the State of Delaware.*

**ZURN, Vice Chancellor.**

A former police officer is challenging his termination by the state agency who employed him. By statute, Delaware affords police officers particularized due process measures when they face disciplinary action. The plaintiff argues that the agency violated those due process rights. He does not have a statutory right to judicial review of the agency's decision. And so, the plaintiff seeks a declaratory judgment that the agency violated his rights, together with a permanent injunction voiding the termination, reinstating the plaintiff to his position, awarding him back pay and benefits, and prohibiting the agency from pursuing additional adverse employment action against him.

The Court of Chancery is proudly a court of limited subject matter jurisdiction. This Court jealously defends that limitation and has a duty to examine issues of subject matter jurisdiction *sua sponte*. I considered the plaintiff's approach to this Court with this mandate in mind. I conclude this Court lacks subject matter jurisdiction to hear the plaintiff's claims. This Court does not have statutory jurisdiction, and the plaintiff does not allege an equitable claim. And a practical view of the plaintiff's claims reveals that to the extent he seeks equitable relief, he has an adequate remedy at law in the form of a writ of mandamus. The case is therefore dismissed, and the parties may transfer the matter to Superior Court under

2

10 *Del. C.* § 1902 within sixty days.[1]  If the plaintiff elects to transfer, the remaining issues presented by the pending motion to amend and motion to compel, which have been fully briefed, should be transferred as well, so a court of competent jurisdiction can pass on their merits.

## I.   BACKGROUND[2]

Plaintiff Shawn Mock served in the Delaware State Police from March 1, 2013 until his termination on December 13, 2018.[3]  Defendant Division of State Police (the "Division") is a division of Delaware's Department of Safety and Homeland Security.[4]  The Division is "responsible for the performance of all the powers, duties

---

[1] *See* 10 *Del. C.* § 1902 ("No civil action, suit or other proceeding brought in any court of this State shall be dismissed solely on the ground that such court is without jurisdiction of the subject matter, either in the original proceeding or on appeal.  Such proceeding may be transferred to an appropriate court for hearing and determination, provided that the party otherwise adversely affected, within 60 days after the order denying the jurisdiction of the first court has become final, files in that court a written election of transfer . . . .").

[2] Because I conclude that this Court lacks subject matter jurisdiction over this action, I limit my discussion of the facts to only those necessary to resolve that issue.  Though I raised this issue before considering the pending motion to amend and motion to compel, I evaluate subject matter jurisdiction, as I must, from the face of the amended complaint, available at Docket Item ("D.I.") 9 [hereinafter "Am. Compl."], as well as the documents attached and integral to it.  *See Wilm. Fraternal Order of Police Lodge #1 v. Bostrom*, 1999 WL 39546, at *4 (Del. Ch. Jan. 22, 1999) ("Subject matter jurisdiction is determined from the face of the complaint as of the time it was filed, with all material factual allegations assumed to be true.") (citing *Diebold Comput. Leasing, Inc. v. Com. Credit Corp.*, 267 A.2d 586, 590 (Del. 1970), and *W. Airlines, Inc. v. Allegheny Airlines, Inc.*, 313 A.2d 145, 149 (Del. Ch. 1973)); Ct. Ch. R. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

[3] Am. Compl. ¶ 4; *id.* at n.1; D.I. 11 ¶ 4 [hereinafter "Ans."].

[4] Am. Compl. ¶ 5; Ans. ¶ 5.

and functions heretofore vested in: (1) The State Highway Department, the State Highway Commission, the State Police and the Superintendent of the State Police" and "(2) . . . the Superintendent of the State Police and the State Bureau of Identification . . . ."[5]

On October 17, 2017, Mock hit another vehicle with his police car.[6] His car's dash camera "captured the entire accident and its aftermath," including Mock parking the damaged car at his home for the night.[7] Mock failed to report the collision at the time it occurred, as is required by his employer's policy.[8] The following morning, a trash collector knocked on Mock's door and told him that it appeared the police car had been damaged, but that the trash collector was not the cause.[9] Only at this point did Mock notify his supervisor about the accident; but he told his supervisor "that it appeared the accident had occurred as a hit and run outside of his residence."[10] Mock's supervisor drafted a report based on Mock's account of the accident.[11] After inspecting the car and the dash camera footage, Mock's

---

[5] 29 *Del. C.* § 8206(a).

[6] Am. Compl. ¶ 6.

[7] *Id.* ¶ 8.

[8] *Id.* ¶ 6.

[9] *Id.* ¶ 9.

[10] *Id.* ¶ 10.

[11] *Id.* ¶ 21.

superiors brought their suspicions to Mock.[12]  One of his superiors drafted a second report based on the events as they actually occurred.[13]

On November 15, 2017, the Division's Internal Affairs department notified Mock he was under investigation.[14]  Such investigations are governed by a set of statutes called the Law Enforcement Officers' Bill of Rights ("LEOBOR").[15]

> LEOBOR was passed in 1985 to provide uniform procedural rights to officers under investigation by their own departments.  The Delaware General Assembly was concerned about "inconsistencies between departmental procedures within the State."  LEOBOR applies to "all law-enforcement disciplinary proceedings throughout the State, conducted by the law-enforcement agencies specified in § 9200(b) of this title."  Most relevant here is Section 9200(c), which sets forth the rights of officers under investigation for disciplinary purposes.[16]

On February 28, 2018, Internal Affairs charged Mock with ten counts.[17]  Beginning on April 30 and spanning three days, a Divisional Trial Board (the "Trial

---

[12] *Id.* ¶¶ 12–15, 17, 20.

[13] *Id.* ¶¶ 22.  Plaintiff contends his "statements were not material to the processing, expense and repair of the property damage to the DSP vehicle, which was the same cost to Defendant regardless of whether the damage occurred as a 'hit and run' or an 'officer-at-fault' accident."  *Id.* ¶ 23.

[14] *Id.* ¶ 28.

[15] 11 *Del. C.* § 9200, *et seq.*

[16] *Brittingham v. Town of Georgetown* (*Brittingham II*), 113 A.3d 519, 525 (Del. 2015) (quoting *Alexander v. Town of Cheswold*, 2007 WL 1849089, *3 (Del. Super. Jun. 27, 2007), and 11 *Del. C.* § 9209), *aff'g Brittingham v. Town of Georgetown* (*Brittingham I*), 2011 WL 2650691, at *4 (Del. Super. June 28, 2011).

[17] Am. Compl. ¶ 31.

Board") held a hearing and deliberations on Mock's charges.[18] The Trial Board found seven of the ten charges "substantiated" and recommended disciplinary actions including termination.[19] The Trial Board sent its written recommendations to the Division, but not to Mock.[20]

After the Trial Board makes its recommendations, the Superintendent of the Division of the State Police (the "Superintendent") must "review that decision, taking into consideration other specified factors, and then issue his own decision . . . as to what penalties he recommends be imposed in a given case."[21] On July 18, the Superintendent sent Mock his decision agreeing with the Trial Board's recommendations.[22] Upon receipt of the Superintendent's decision, Mock's counsel asked the Division for the Trial Board recommendations and the Division sent them.[23]

---

[18] *Id.* ¶¶ 33, 36, 44.

[19] *Id.* ¶ 36; *see also* D.I. 1 [hereinafter "Compl."] at Ex. B. While Plaintiff incorporated the exhibits attached to his initial complaint to the Amended Complaint, they are docketed with the initial complaint. *Compare* D.I. 1, *with* D.I. 9. So, I will cite the exhibits as they are docketed.

[20] Am. Compl. ¶ 39.

[21] *Id.* ¶ 37.

[22] *Id.* ¶ 38; Compl. at Ex. A.

[23] Am. Compl. ¶ 39; Compl. at Ex. B.

On July 26, Mock filed a timely written appeal to the Secretary of the Department of Safety and Homeland Security (the "Secretary").[24] "The Secretary is vested with the authority to hear appeals from disciplinary decisions of the Division and such appeals are reviewed upon the Trial Board's and Superintendent's written decisions; the transcript and record of the Divisional Trial Board hearing, and the officer's prior disciplinary file (collectively the 'record')."[25] The Secretary held oral argument on November 7.[26] The Deputy Attorney General defending the Superintendent's decision on appeal before the Secretary had represented and advised the Trial Board, and had drafted the Trial Board's recommendation to the Superintendent.[27] On December 13, the Secretary issued his written decision upholding the Superintendent's decision to terminate Mock's employment.[28]

On March 25, 2019, Mock sued the Division in this Court.[29] Mock seeks declaratory relief, damages, reinstatement, and an injunction against another iteration of the LEOBOR process, alleging the Division violated his rights under

---

[24] Am. Compl. ¶ 46.

[25] *Id.*

[26] *Id.* ¶ 50.

[27] *Id.* ¶¶ 35, 47–49, 64(g); Compl. at Ex. B; Compl. at Ex. E; Compl. at Ex. C; Compl. at Ex. D.

[28] Am Compl. ¶ 51; Compl. at Ex. E.

[29] *See generally* Compl.

"LEOBOR, Delaware common law, and constitutional due process."[30] He seeks a second appellate review of his termination that would ultimately reverse the termination, give him his job back, and award him money damages. Mock alleges his termination should be reversed for violations "including but not limited to" the following seven:

1. The Division's "investigation was initiated and continued in violation of [Mock]'s rights under LEOBOR [11 *Del. C.* § 9200(c)] and the fruits of that improper investigation created and[] tainted the charges lodged against [Mock], and tainted ensuing proceedings;"[31]

2. The Division "affirmatively created official written reports, after [Mock] was already under formal investigation, and used those documents to create and lodge 'false official report' charges against" [Mock] in violation of his rights under 11 *Del. C.* § 9200(c);[32]

3. Mock's "Trial Board hearing evidence was obtained, received or admitted into evidence which violated [Mock]'s rights established by [the] Constitution and by LEOBOR [11 *Del. C.* § 9206];"[33]

4. The Trial Board "entered judgment based on evidence obtained in violation of [Mock's] rights under LEOBOR";[34]

---

[30] Am. Compl. ¶ 59; *id.* ¶¶ 2, 64(c); *id.* at 23–24.

[31] *Id.* ¶ 64(a).

[32] *Id.* ¶ 64(b) (emphasis omitted).

[33] *Id.* ¶ 64(c).

[34] *Id.* ¶ 64(d).

8

5. "[T]he Trial Board issued its written decision *ex parte* to only [] Internal Affairs and not to [Mock], prior to the issuance of the Superintendent's decision and recommendation of termination, in violation of LEOBOR [11 *Del. C.* § 9206] and [the Division's] internal procedures;"[35]

6. "[T]he Trial Board's decision failed to make a legally sufficient, evidentiary-based, findings of facts and conclusions of law upon the substantiated charges, and neglected to address the unsubstantiated charges at all;"[36] and

7. The Division "allowed [Mock]'s administrative appeal to proceed with the improper dual representation of allowing the Deputy Attorney General who advised the Trial Board and drafted their decision, to appear as counsel in opposition to [Mock]'s appeal of that same decision."[37]

On May 6, the Division filed a notice of removal to the United States District Court for the District of Delaware.[38] Mock moved to remand, and the Division agreed to remand so long as fees were not sought.[39] On June 20, Mock filed an amended complaint in this Court (the "Amended Complaint"), which removed most, if not all, references to federal due process rights.[40] The Division filed its answer on

---

[35] *Id.* ¶ 64(e).

[36] *Id.* ¶ 64(f); *see also id.* ¶ 36.

[37] *Id.* ¶ 64(g).

[38] D.I. 7.

[39] D.I. 8.

[40] D.I. 9. After the District Court remanded this case, Plaintiff filed an Amended Complaint that omitted his original claims under 43 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution. *Compare* Compl. ¶¶ 2, 58 (citing 42 U.S.C. § 1983 and the Fourteenth Amendment), *and id.* at 18, 23 (citing "federal and state due process rights" and 42 U.S.C. § 1983), *with* Am. Compl. ¶¶ 2, 58 (removing references to 42 U.S.C. § 1983 and the Fourteenth Amendment), *and id.* at 18, 23 (removing references to

9

June 28 and moved for leave to file an amended answer on February 27, 2020.[41]  On

January 29, 2021, Mock filed a motion to compel.[42]  On June 23, the Court asked for

supplemental briefing regarding whether this Court has subject matter jurisdiction.[43]

The parties submitted the requested briefing, and the Court took the matter under

advisement on March 17, 2022.[44]

## II.    ANALYSIS

For decades, Delaware courts have been attempting to parse which courts can

offer what relief for a violation of LEOBOR.[45]  While LEOBOR enumerates several

procedural requirements for disciplining a police officer, it does not enumerate any

remedy for a failure to follow those requirements.[46]  It does not make any provision

---

42 U.S.C. § 1983 and adding "and other rights secured by Delaware law, as described herein").

[41] D.I. 11; D.I. 21.

[42] D.I. 28.

[43] D.I. 42.

[44] D.I. 47; D.I. 48; D.I. 51; D.I. 52.

[45] *E.g.*, *Burge v. City of Dover*, 1987 WL 12311, at \*7 (Del. Ch. June 8, 1987) ("The Law-Enforcement Officers' Bill of Rights itself does not contain any remedy provisions, and I need not at this time intimate any view as to what remedies are authorized or appropriate for a good faith violation of its terms, since it is clear that [42 U.S.C. §] 1983 does authorize the ultimate remedy of reinstatement and the award of back pay." (citing *Harkless v. Sweeny Indep. Sch. Dist.,* 427 F.2d 319 (5th Cir. 1970), and *Vega v. Civil Serv. Comm'n,* 385 F.Supp. 1376 (S.D.N.Y. 1974))).

[46] *Id.* ("The Law-Enforcement Officers' Bill of Rights itself does not contain any remedy provisions . . . .").

for judicial appellate review, and it is not subject to review under the Delaware Administrative Procedures Act (the "APA").[47]

The Superior Court has emphasized that mandamus is appropriate for nondiscretionary and ministerial LEOBOR violations.[48] I came across those Superior Court cases in preparing for argument on the Division's motion to amend and Mock's motion to compel, and they inspired my request for supplemental briefing as to whether this Court has subject matter jurisdiction over this case.[49] Mock contends it does; the Division contends it does not.

This Court is tasked with "jealously guard[ing] its domain as a court of equity."[50] "The Court of Chancery will dismiss an action for want of subject matter

---

[47] 29 *Del. C.* § 10161; *Haden v. Bethany Beach Police Dep't*, 2014 WL 2964081, at *2 (Del. Super. June 30, 2014) ("Moreover, this Court has clearly held in prior precedent that it does not have jurisdiction over appeals from decisions rendered pursuant to LEOBOR. Neither LEOBOR nor the [APA] renders appellate rights to law enforcement officers under LEOBOR's purview." (citations omitted)); *Smith v. Dep't of Pub. Safety of State*, 1999 WL 1225250, at *11 (Del. Super. Oct. 26, 1999) ("This Court has previously held that it does not have jurisdiction to hear appeals from decisions rendered by an appeal panel pursuant to LEOBOR because such jurisdiction has not been conferred by either the Constitution or statutes of this State. Moreover, neither of the parties have presented any authority for the existence of an appeal to this Court from decisions rendered pursuant to the Divisional Manual." (citing *Wescott v. City of Milford Police*, 1995 WL 465188, at *4 (Del. Super. July 31, 1995), *as revised* (Jan. 26, 1996))), *aff'd*, 765 A.2d 953 (Del. 2000); *id.* at *11 n.15 ("The Divisional Manual provides for an appeal from the hearing or Appeal Board to the Secretary of Public Safety, but only in cases where suspension exceeds five days." (citing Divisional Manual at p. VII–5–13)).

[48] *See infra* Section II(A)(1).

[49] D.I. 42.

[50] *In re Est. of Tinley*, 2007 WL 2304831, at *1 (Del. Ch. July 19, 2007).

11

jurisdiction 'if it appears from the record that the Court does not have jurisdiction over the claim.'"[51] "Equitable jurisdiction is a predicate issue for every matter in this court of limited jurisdiction."[52] This Court can exercise subject matter jurisdiction only when (i) "a plaintiff states an equitable claim," (ii) "a plaintiff requests equitable relief and there is no adequate remedy at law," or (iii) "jurisdiction exists by statute."[53] The parties do not dispute that this Court lacks statutory jurisdiction over this matter, or that Mock has not brought an equitable claim.[54] The parties dispute whether Mock has an adequate remedy at law.

In evaluating whether an adequate remedy at law exists, the Court looks beyond the relief stated in the complaint and focuses instead on "what relief is actually sought."[55] This Court "must make a realistic assessment of the nature of an

---

[51] *Acierno v. New Castle Cty.*, 2006 WL 1668370, at *3 (Del. Ch. June 8, 2006) (quoting *AFSCME Locals 1102 & 320 v. City of Wilm.*, 858 A.2d 962, 965 (Del. Ch. 2004)).

[52] *Preston Hollow Cap., LLC v. Nuveen, LLC*, 2019 WL 3801471, at *4 (Del. Ch. Aug. 13, 2019) (citing *Athene Life & Annuity Co. v. Am. Gen. Life Ins. Co.*, 2019 WL 3451376 (Del. Ch. July 31, 2019)).

[53] *Delawareans for Educ. Opportunity v. Carney*, 2018 WL 4849935, at *5 (Del. Ch. Oct. 5, 2018) (citations omitted).

[54] Am. Compl. ¶¶ 3, 61, 65 (asserting this Court has jurisdiction because Plaintiff contends he lacks an adequate remedy at law); D.I. 48 at 11, 19 (arguing while Plaintiff purports to seek equitable relief, he does not have a statutory or equitable right to this Court's jurisdiction).

[55] *See Rapposelli v. Elder*, 1977 WL 23821, at *1 (Del. Ch. Nov. 8, 1977); *see also Gladney v. City of Wilm.*, 2011 WL 6016048, at *4 (Del. Ch. Nov. 30, 2011) ("It is the practice of this Court in determining its jurisdiction, to go behind the facade of prayers to determine the true reason for which the plaintiff has brought suit." (alterations and internal quotation

12

alleged wrong and the relief available."[56]   In other words, "[t]his jurisdictional inquiry is a serious one involving a close examination of the plaintiff's claims and desired relief, not a perfunctory verification of the plaintiff's incantation of magic words sounding in equity."[57]   "The inquiry is necessarily fact-intensive and, thus, peculiar to each asserted claim."[58]  "In evaluating the sufficiency of the legal remedy, prerogative writs are somewhat awkward because of their own equitable nature."[59]

---

marks omitted) (quoting *Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, 602 A.2d 74, 78 (Del. Ch. 1991))).

[56] *Levinson v. Cont'l Ins. Servs., Inc.*, 1991 WL 50145, at *2 (Del. Ch. Apr. 4, 1991) (citing *Hughes Tool Co. v. Fawcett Publ'ns, Inc.*, 297 A.2d 428 (Del. Ch. 1972), *rev'd on other grounds*, 315 A.2d 577 (Del. 1974)); *see also, e.g.*, *Webb v. Diamond State Tel. Co.*, 237 A.2d 143, 146 (Del. Ch. 1967) ("Accordingly, I conclude that mandamus is not an appropriate or adequate remedy here, plaintiff being, in my opinion, entitled to injunctive relief if the relevant facts are resolved in his favor."); *SimplexGrinnell, L.P. v. Del. Dep't of Lab.*, 2012 WL 5362835, at *3–9 (Del. Ch. Oct. 31, 2012) (determining whether or not plaintiff had an adequate remedy at law via administrative remedy and a writ of certiorari for purposes of analyzing subject matter jurisdiction).

[57] *Savage v. Savage*, 920 A.2d 403, 408 (Del. Ch. 2006) (internal quotation marks omitted) (quoting *McMahon v. New Castle Assocs.*, 532 A.2d 601, 603 (Del. Ch. 1987)); *see Christiana Town Ctr., LLC v. New Castle Ctr.* (*Christiana Town Ctr. I*), 2003 WL 21314499, at *3 (Del. Ch. June 6, 2003) ("In this regard, the Court of Chancery will not exercise subject matter jurisdiction where a complete remedy otherwise exists but where plaintiff has prayed for some type of traditional equitable relief as a kind of formulaic 'open sesame' to the Court of Chancery." (internal quotation marks omitted) (quoting *Int'l Bus. Machs.*, 602 A.2d at 78, and citing *City of Wilm. v. Del. Coach Co.*, 230 A.2d 762, 766–67 (Del. Ch. 1967))), *aff'd sub nom. Christiana Town Ctr., LLC v. New Castle Cty.* (*Christiana Town Ctr. II*), 841 A.2d 307 (Del. 2004) (TABLE).

[58] Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* [hereinafter "Wolfe & Pittenger"], § 2.03[b][2], at 2-61 (2021) (collecting cases).

[59] *Fam. Ct. v. Dept. of Lab. and Indus. Rels.*, 320 A.2d 777, 780 (Del. Ch. 1974).

"[M]andamus will not lie unless the plaintiff has no other adequate remedy."[60] "But such writs, despite their prerogative nature, are capable of affording complete and adequate relief to a petitioner, and, if such is the case, resort may not be had to a court of equity."[61] If, after a practical assessment of a plaintiff's claims, it appears that an adequate remedy at law exists, the Court must dismiss them.[62]

I have considered whether Mock has an adequate remedy at law for each of his asserted violations in turn, and have concluded this Court does not have subject matter jurisdiction over any of them. To my eye, the Superior Court has the discretionary authority to remedy most of Mock's asserted violations and give him what he seeks via a writ of mandamus.

---

[60] *Smith*, 1999 WL 1225250, at *12 (citing *State ex rel. Lyons v. McDowell*, 57 A.2d 94, 97 (Del. Super. 1947)).

[61] *Fam. Ct.*, 320 A.2d at 780 (collecting cases); *cf. Hundley v. O'Donnell*, 1998 WL 842293, at *3 (Del. Ch. Dec. 1, 1998) ("Plaintiff can file a writ of certiorari in the Superior Court to have that issue resolved. Furthermore, Plaintiff fails to convince me that this remedy is inadequate. Were there some factors pleaded here to suggest that were so, the result might be quite different.").

[62] *United BioSource LLC v. Bracket Hldg. Corp.*, 2017 WL 2256618, at *2 (Del. Ch. May 23, 2017) (quoting *Int'l Bus. Machs.*, 602 A.2d at 78).

In basic terms, a mandamus is "[a] writ issued by a court to compel performance of a particular act by a lower court or a governmental officer or body." A mandamus is "an exceptional remedy that is not available as a matter of right," and it may be directed only at certain entities or individuals: "a lower court, agency, or public official." This flows naturally from the writ's status at common law in England as "a command issuing in the king's name from the court of king's bench, and directed to any person, corporation, or inferior court of judicature within the king's dominions."[63]

The writ of mandamus is an extraordinary "remedial writ used to compel officers and other officials to perform their duties as required by law."[64] It is "appropriate only when a plaintiff is able to establish a clear legal right to the performance of a non-discretionary duty."[65] If a litigant has suffered a nondiscretionary and ministerial wrong, then it may be remedied by a writ of mandamus.[66]

For Mock's remaining two alleged violations, I do not believe mandamus is appropriate, but Mock has not pled what he must to secure this Court's jurisdiction,

---

[63] *State ex rel. Abbott v. Aaronson*, 206 A.3d 260, 2019 WL 925856, at *1 (Del. Feb. 25, 2019) (TABLE) (citations and emphasis omitted).

[64] *Mell v. New Castle Cty.*, 2003 WL 1919331, at *8 (Del. Ch. Apr. 11, 2003) (citations omitted).

[65] *Darby v. New Castle Gunning Bedford Ed. Ass'n*, 336 A.2d 209, 210 (Del. 1975) (citations omitted); *Nathan v. Martin*, 317 A.2d 110, 113 (Del. Super. 1974) ("The remedy is available only where the right of the petitioner is clear." (citing *Webb*, 237 A.2d at 146)).

[66] *Darby*, 336 A.2d at 210 ("The writ is extraordinary and appropriate only when a plaintiff is able to establish a clear legal right to the performance of a non-discretionary duty." (citations omitted)); *Mell*, 2003 WL 1919331, at *8 ("The writ of mandamus is a remedial writ used to compel officers and other officials to perform their duties as required by law. The writ only applies to ministerial actions, not to discretionary acts." (citations omitted)).

15

either as a due process claim or as a claim for administrative error. In the absence of a statutory right of judicial review,

> a court will review an administrative decision, even in the absence of such a statute, if the action by the agency was arbitrary or an abuse of discretion. This is so because in the administration of a statutory remedy, a discretion abused or exercised arbitrarily is no remedy at all. And equity will grant relief in such situations if there is no adequate alternative remedy available at law.[67]

And so, for those administrative violations that are nondiscretionary and ministerial, Mock has an adequate remedy at law in mandamus. For those that are more discretionary in nature, Mock has failed to secure this Court's jurisdiction by alleging the process he already received was not adequate. Accordingly, this action is dismissed for lack of subject matter jurisdiction.

### A. The Nondiscretionary And Ministerial LEOBOR Violations Mock Alleges Have An Adequate Remedy In Mandamus.

This Court stands as a vigilant sentry at the borders of its subject matter jurisdiction. It is particularly vigilant at the historic and essential border between equity and writs. From my post, I conclude that five of the seven violations Mock alleges have an adequate remedy at law in mandamus.

---

[67] *Choma v. O'Rourke*, 300 A.2d 39, 41 (Del. Ch. 1972) (citations omitted).

16

### 1. Mandamus As A Remedy For LEOBOR Violations

Delaware courts have repeatedly "suggested that a writ of mandamus may be the proper way to remedy LEOBOR violations."[68] Much of LEOBOR is plainly ministerial and has been held to be such.[69] The Superior Court has "assume[d] mandamus is available" to address LEOBOR violations including: a plaintiff not being informed in writing of the nature of the investigation prior to being questioned;[70] the absence of any record, written, taped or otherwise, of any interview conducted in connection with the investigation;[71] and a failure to provide a hearing before an impartial board.[72] And the Superior Court has the authority to reinstate a police officer via a writ of mandamus.[73] If the Superior Court finds an officer's

---

[68] *E.g.*, *Rosario v. Town of Cheswold*, 2007 WL 914899, at *3 (Del. Super. Mar. 2, 2007) (citing *Smith*, 1999 WL 1225250, at *12, and *Knox v. City of Elsmere*, 1995 WL 339096, at *1 (Del. Super. May 10, 1995), and *Maull v. Warren*, 1992 WL 114111, at *3 (Del. Super. Apr. 24, 1992)), *aff'd*, 945 A.2d 1168 (Del. 2008).

[69] *Smith*, 1999 WL 1225250, at *12 ("The requirements for disciplinary investigations are specific and do not leave room for discretion. Thus, the actions mandated by the statute are ministerial rather than discretionary.").

[70] *Id.* at *3, *13.

[71] *Id.*

[72] *Knox*, 1995 WL 339096, at *6 (denying defendants' motion for summary judgment on plaintiff's petition for a writ of mandamus based on allegations defendants violated 11 *Del. C.* § 9205(b)).

[73] *Rosario*, 2007 WL 914899, at *3 ("In fact, in a case where violations of the LEOBOR were alleged this Court stated that mandamus is the proper remedy to compel reinstatement of officers or employees illegally discharged, removed, or suspended in violation of the civil service law." (internal quotation marks omitted) (quoting *Smith*, 1999 WL 1225250, at *12)).

termination comprised a ministerial and nondiscretionary violation of LEOBOR, the Superior Court has the authority to effectively reverse the unappealable termination and restore the officer's job and benefits.[74]

Accordingly, mandamus is the proper remedy for substantial LEOBOR violations, including where reinstatement is sought.[75]  Nondiscretionary or ministerial compliance with clear legal rights under LEOBOR is enforceable through a writ of mandamus, if warranted in the Superior Court's discretion.[76]

---

[74] *See, e.g., id.*; *cf. State ex rel. Hall v. Camper*, 347 A.2d 137, 138–39 (Del. Super. 1975) (denying defendant's motion for summary judgment where "Plaintiff seeks a writ of mandamus to compel the members of the Board of Education of the Capital School District to restore him to his position as Principal of the West Dover Elementary School at an annual salary of $19,749.00.  In the alternative, plaintiff asks payment of the aforementioned sum").  *But see Smith*, 1999 WL 1225250, at *13 (relying on a Massachusetts case from 1947 when stating the following "logical remedy" would be improper:  "In the case at bar, it would be senseless to compel the state police to conduct the disciplinary investigation and proceedings again in compliance with LEOBOR.  The only logical remedy would be to declare the proceedings void and compel the State Police to remove the matter from the Plaintiff's record." (citing *Henderson v. Mayor of Medford*, 75 N.E.2d 642 (Mass. 1947))).

[75] *Smith*, 1999 WL 1225250, at *12 (reaffirming *"*mandamus is the proper remedy to compel reinstatement of officers or employees illegally discharged, removed, or suspended in violation of the civil service law" (internal quotation marks and emphasis omitted) (quoting 55 C.J.S. *Mandamus* § 2[90] (1998))); *accord Hiller v. City of Rehoboth Beach*, 2020 WL 5637053, at *4 (Del. Super. Sept. 18, 2020) ("In certain circumstances, mandamus may address LEOBOR violations, including reinstatement; however, the violations must be substantial in nature.").

[76] *Rosario*, 2007 WL 914899, at *3; *Brittingham II*, 113 A.3d at 526 ("Brittingham and Story, as officers protected by LEOBOR, had a clear legal right to the process provided therein.").

## 2. The Historic Separation Of Writs And Equity

Mandamus and equity have been in different jurisdictions since the feudal English system on which Delaware's system is modeled. "The jurisdiction to issue the writ of mandamus is the same precisely as that formerly exercised by the Court of King's Bench in England, except where modified by statute there[.]"[77] While the Court of King's Bench was empowered to issue writs of mandamus, the King's Chapel in England evolved into a Court of Chancery to afford judicial relief where writs could not.[78]

That jurisdictional distinction abides in Delaware, where "there remains an historic and constitutional separation of law and equity."[79] When Delaware established its Superior Court in the 1800s, "jurisdiction to issue writs of mandamus was conferred upon [the Superior Court] by statute, which provided that

---

[77] II Victor B. Woolley, *Practice in Civil Actions and Proceedings in the Law Courts of the State of Delaware* [hereinafter "Woolley"], § 1654 (1906); *accord Swift v. Richardson*, 32 A. 143, 145–47 (Del. Super. 1886).

[78] William T. Quillen & Michael Hanrahan, *A Short History of the Delaware Court of Chancery—1792–1992*, 18 DEL. J. CORP. L. 819, 820 (1993).

[79] *Monroe Park v. Metro. Life Ins. Co.*, 457 A.2d 734, 738 (Del. 1983).

> The judges of the Superior Court or any two of them shall[], administer justice to all persons and exercise jurisdictions and powers hereby granted them, concerning the premises, according to law and equity, as fully and amply, to all intents and purposes whatsoever, as the justices of the King's Bench and common pleas at Westminster, or the chancellor of England, may and can do.[80]

The Superior Court's jurisdiction to issue writs of mandamus is currently codified in 10 *Del. C.* § 564. The Superior Court has the exclusive, "discretionary power to issue a [w]rit of [m]andamus 'to lower tribunals, boards and agencies, *inter alia,* to compel performance of their official duties.'"[81]

The Court of Chancery's "traditional equitable jurisdiction . . . is to be derived from the vague pronouncement that the jurisdiction of the Delaware Court of Chancery is coextensive with that exercised by the High Court of Chancery in Great Britain as of the separation of the American colonies in 1776."[82] The Court of Chancery's jurisdiction excludes writs and any claim for which there is an adequate remedy at law: this Court lacks subject matter jurisdiction where a "sufficient

---

[80] II Woolley, § 1654 (citations and quotation marks omitted); *see also Rash v. Allen*, 76 A. 370, 374 (Del Super. 1910) (explaining the Superior Court's authority as established by Delaware's third Constitution of 1831); *Young v. Red Clay Consol. Sch. Dist.*, 159 A.3d 713, 760 (Del. Ch. 2017) ("Delaware has had four constitutions, adopted respectively in 1776, 1792, 1831, and 1897. They are not separate and independent, but rather linked.").

[81] *Knox*, 1995 WL 339096, at *1 (quoting *Schagrin Gas Co. v. Evans,* 418 A.2d 997–98 (Del. 1980)).

[82] Wolfe & Pittenger, § 2.02[b], at 2-7.

20

remedy may be had by common law, or statute, before any other court or jurisdiction of this State."[83]

Where mandamus is available, this Court's injunctive power is superfluous and therefore not available. If the Superior Court awards a writ of mandamus, and the administrative agency does not abide by the Superior Court's determination, then perhaps a claim for injunctive enforcement will be heard by this Court.[84] But Delaware courts presume that agencies "will respect any decision rendered by any competent court of this State."[85] "It would be anathema to our form of government to believe, as a baseline principle, that after a court renders [an order] another governmental agency would not follow that decision."[86]

---

[83] 10 *Del. C.* § 342.

[84] *Christiana Town Ctr. I*, 2003 WL 21314499, at *4 n.19 ("It may actually be the case that a particular [government] agency does not follow such a [declaratory] judgment, but a party should only seek injunctive relief if that agency *actually* refuses to comply with the judicial declaration."); *Jones v. Mut. Fid. Co.*, 123 F. 506, 507 (C.C.D. Del. 1903) ("The fact that equitable relief can be granted in aid of a legal remedy only after the plaintiff has exhausted such remedy precludes the possibility of any clash or conflict between legal jurisdiction and equitable jurisdiction or of any blending of legal and equitable remedies in the same suit.").

[85] *Christiana Town Ctr. I*, 2003 WL 21314499, at *4; *Reeder v. Del. Dep't of Ins.*, 2006 WL 510067, at *16 (Del. Ch. Feb. 24, 2006) ("There is no justification on this record for an injunction requiring the Insurance Department to do what it must do in any event— comply with applicable statutory constraints on its behavior."); *Gladney*, 2011 WL 6016048, at *4 ("The Courts of this State understandably *presume* that governmental agencies and actors will follow the law." (citing *Christiana Town Ctr. I*, 2003 WL 21314499, at *4 n.19)).

[86] *Christiana Town Ctr. I*, 2003 WL 21314499, at *4 n.19.

That the Superior Court might deny a plaintiff's petition for a writ does not inform the remedy's adequacy for this Court's jurisdictional consideration. The Superior Court maintains the discretion to deny petitions for writs of mandamus for technical administrative violations that "do not rise to the level of procedural or substantive due process violations."[87] In making that determination regarding alleged LEOBOR violations, the Superior Court has considered whether in fact the officer committed the infraction and was appropriately disciplined.[88] The Superior Court has also in the past declined to issue a writ of mandamus, and instead has held a hearing to determine an "appropriate remedy" for the plaintiff.[89] The existence of

---

[87] *Hiller*, 2020 WL 5637053, at *4 (citing *Smith*, 1999 WL 1225250, at *13).

[88] *See id.* ("Although termination was an appropriate punishment choice for a Rule 800 violation, Hiller contends the LEOBOR violations warrant reversal of his termination. The Panel found multiple LEOBOR violations; however, not every LEOBOR violation will support issuance of mandamus."); *Smith*, 1999 WL 1225250, at *13 ("The LEOBOR violations set forth in Plaintiff's complaint are technical in nature. The Complaint does not allege violations which rise to the level of procedural or substantive due process violations. Moreover, Plaintiff never alleges that he was falsely accused of the action for which he was disciplined. In the Court's estimation, Plaintiff's complaint does not include allegations sufficiently egregious or compelling to warrant the Court interjecting in the routine disciplinary proceedings of a state agency.").

[89] *In re Massey*, 2002 WL 1343828, at *2 (Del. Super. June 20, 2002); *see Rosario*, 2007 WL 914899, at *3 (discussing the subsequent events of *In re Massey*).

an adequate legal remedy is enough to divest this Court of jurisdiction,[90] even if the plaintiff is not ultimately successful in securing that remedy.[91]

### 3. Mock's Request for Reinstatement Is Adequately Remedied Through Mandamus.

And so, peering over the wall between mandamus and equity, and with the law that mandamus is an adequate remedy for nondiscretionary and ministerial LEOBOR violations in my ear, I turn to Mock's claims. His clearest attempt to secure this Court's equitable jurisdiction is his second cause of action for "Permanent Injunction; Reinstatement."[92] The prayer for relief elaborates Mock is asking this Court to

---

[90] *E.g.*, *Sabo v. Williams*, 303 A.2d 696, 697 (Del. Ch. 1973) ("The existence of such an adequate remedy precludes this court's concurrent jurisdiction.").

[91] *Cf. Intel Corp., v. Fortress Inv. Gp., LLC*, 2021 WL 4470091, at *8 (Del. Ch. Sept. 30, 2021) (finding where Intel had available license defenses in other actions at the time it filed its Chancery complaint, it had an adequate remedy at law that precluded this Court from exercising its equitable jurisdiction to declare Intel had a license); *Maplewood Indus., Inc. v. Dep't of Nat. Res. & Env't Control*, 1989 WL 155944, at *4 (Del. Ch. Dec. 7, 1989) (finding plaintiff had an adequate remedy at law via a damages action, notwithstanding defendant's possible sovereign immunity defense to plaintiff's action, should plaintiff chose to move forward); *Buczik v. Wonchoba*, 1993 WL 93444, at *2 (Del. Ch. Mar. 24, 1993) (finding plaintiff's fear that "raising the release as an affirmative defense in the Superior Court action would not be an adequate remedy because the jury . . . might disregard the merits of the release" meritless).

[92] Am. Compl. ¶¶ 63–66.

23

> [i]ssue a permanent injunction reinstating Plaintiff's employment as a Delaware State Trooper at his last rank, directing Defendant to reimburse Plaintiff for the loss of all back pay, pension contributions and benefits, from the date of Plaintiff's suspension without pay through the date of his reinstatement to employment, with pre and post-judgment interest thereon, as part of his equitable reinstatement, and enjoining Defendant from undertaking further proceedings adverse to his employment related to this matter.[93]

In practical terms, this claim seeks (1) a reversal of the Division's termination of Mock's employment because the Division violated Mock's rights in doing so; (2) reinstatement and (3) pecuniary restitution that would logically flow from the reversal; and (4) a forward-looking permanent injunction.

As an initial matter, "[a]n injunction against future wrongdoing is not generally available."[94] "For forward-looking relief to be warranted, the plaintiff must establish a 'reasonable apprehension of a future wrong.'"[95] The forward-looking, permanent injunction Mock seeks is not available because he has not established a "reasonable apprehension of a future wrong"[96] in future LEOBOR

---

[93] *Id.* at 23–24.

[94] *Organovo Hldgs., Inc. v. Dimitrov*, 162 A.3d 102, 114 (Del. Ch. 2017) (collecting cases).

[95] *Id.* at 115 (quoting *McMahon*, 532 A.2d at 606).

[96] *Id.*; *Young*, 2017 WL 2271390, at *53 ("A permanent injunction against future conduct is not warranted simply because a court has found past conduct illegal."); *accord Del. Bldg. & Constr. Trades Council v. Univ. of Del.*, 2014 WL 2218730, at *2 (Del. Ch. May 29, 2014) (holding that injunctive relief was not warranted where a plaintiff "merely contends that, because the Defendants have purportedly not complied with [a] statute in the past, they will continue this alleged pattern of non-compliance" after a court order).

proceedings. An injunction improperly seeking to preclude a theoretical future wrong cannot anchor subject matter jurisdiction in this Court.[97]

Nor does Mock's claim for back pay vest this Court with subject matter jurisdiction.[98] If the Superior Court determines that Mock's termination is invalid or void, it can order compensation for his pecuniary losses.[99]

Mock's claim for reinstatement does not require him to come to this Court, either. As a general matter, mandamus can compel reinstatement.[100] Whether it can do so for Mock depends on the nature of the underlying LEOBOR violations; they will either be nondiscretionary and ministerial, and therefore correctable by mandamus; or they will require a different remedy, perhaps in equity.[101] Mock concedes that at least one of his complaints is ministerial in nature and falls within

---

[97] *Crown Castle Fiber LLC v. City of Wilm.*, 2021 WL 2838425, at *6 (Del. Ch. July 8, 2021).

[98] *Gladney*, 2011 WL 6016048, at *5 ("To the extent Gladney is seeking damages as recompense for her alleged wrongful termination, that claim in itself is not sufficient to support the exercise of this Court's jurisdiction.").

[99] *See Semick v. Casson*, 1986 WL 9933, at *1 (Del. Super. Sept. 4, 1986) (noting a "request for monetary damages could have been presented with the petition for mandamus relief"); *Geloff v. Schramm*, 1984 WL 136933, at *3 (Del. Ch. June 4, 1984) ("In my view, if she prevails on the merits in Superior Court, a writ of mandamus would adequately remedy her situation by compelling the Defendants to fulfill their statutory obligation, perhaps in a more specific, informative way. In addition, the Superior Court may deem money damages appropriate to remedy alleged past injustices.").

[100] *Supra* notes 73–75 and accompanying text.

[101] *Cf. Fletcher v. Casson*, 1988 WL 32020, at *2 (Del. Super. Mar. 23, 1988) (dismissing a writ of mandamus as moot where petitioner "received all the due process protection to which he is entitled in such a proceeding").

the jurisdiction of mandamus: number five, complaining the Trial Board issued its ruling *ex parte*, and only disclosed it to Mock at his counsel's request.[102]

As to the rest of the alleged violations, Mock contends they are nonministerial, and that the violated rights call for the exercise of discretion, and so are not amenable to mandamus.[103] Mock goes on to argue that in the absence of appellate review at law, he lacks an adequate remedy at law and so must be heard by this Court. The Division does not dispute Mock's characterization of the remaining violations, but contends this Court lacks jurisdiction over them anyway. The Division contends LEOBOR violations are only remediable through common law writs, and if a particular violation cannot be remedied by a writ, then there can be no judicial review.[104] In considering the adequacy of Mock's remedies at law, I must make my

---

[102] Am. Compl. ¶¶ 37–40; D.I. 47 at 15 ("LEOBOR requires some purely ministerial obligations, *inter alia*: . . . that, following a hearing, a copy of the hearing board's decision with findings and conclusions, shall be 'delivered or mailed promptly' to the officer or his representative ([11 *Del. C.* ]§9207)."); D.I. 51 at 7 ("But for perhaps a single issue in this case—the *ex parte* issuance of trial board decision which was produced after the fact at Mock's counsel's request . . . .").

[103] D.I. 47 at 23 ("[A] writ of mandamus is not the appropriate vehicle to review and redress Plaintiff's claims[:] . . . DSP's creation of after-the-fact reports and withholding of the original Martin report in discovery and at the hearing similarly require an examination of the conduct that took place and whether it violated Cpl. Mock's due process rights. No ministerial duties are involved."); *id.* at 25, 27–28, 30; D.I. 51 at 17.

[104] While I focus my analysis on the adequacy of a writ of mandamus, the Division also argues a writ of certiorari would provide Mock a full, fair, and complete remedy at law. D.I. 48 at 16–24. *See 395 Assocs., LLC v. New Castle Cty.*, 2006 WL 2021623, at *3 (Del. Super. July 19, 2006) ("Under this common law writ[ of certiorari], this Court has the power to quash or affirm the proceedings and to remand."). The Superior Court's review

26

own determination and "realistic assessment of the nature of an alleged wrong and the relief available."[105]

For the reasons I will explain, I believe the first five issues have an adequate remedy at law in mandamus. Of course, my belief on the adequacy of mandamus does not bind the Superior Court; the Superior Court may still find the Trial Board's acts were discretionary and not eligible for mandamus,[106] or it may find the violations technical and in its discretion decline to issue a writ.[107] Whether a writ should issue is for the Superior Court to decide: "[w]hile the courts will jealously guard its powers and jurisdictions, they will be careful not to infringe upon the

---

on certiorari "is limited to considering 'the record to determine whether the lower tribunal[:]' (a) exceeded its jurisdiction, (b) committed errors of law, or (c) proceeded irregularly." *Id.* at *3, *5–13 (Del. Super. July 19, 2006) (quoting *Christiana Town Ctr., LLC v. New Castle Cty.* (*Christiana Town Ctr. III*), 865 A.2d 521, 2004 WL 2921830, at *2 (Del. 2004) (TABLE)). Certiorari may not be available as long as there is another basis for review. *Goldstein v. Mun. Ct. for City of Wilm.*, 1991 WL 53830, at *11 (Del. Super. Jan. 7, 1991) ("Delaware has established four criteria for the review of constitutional issues on a Writ of Certiorari: (1) the act of the lower tribunal must be final; (2) there must be no right of appeal, (3) a question of grave public policy and interest must be involved; and (4) there must be no other basis for review available." (citations omitted)).

[105] *Levinson*, 1991 WL 50145, at *2 (citations omitted); *Fischer v. Fischer*, 1999 WL 1032768, at *4 (Del. Ch. Nov. 4, 1999) ("Equity's appropriate focus should be the alleged wrong, not the nature of the claim which is no more than a vehicle for reaching the remedy for the wrong.").

[106] *Stump v. Town of Middletown*, 2019 WL 1514206, at *5 (Del. Super. Apr. 8, 2019), *aff'd*, 227 A.3d 138 (Del. 2020).

[107] *Hiller*, 2020 WL 5637053, at *4 (citing *Smith*, 1999 WL 1225250, at *13).

27

powers, prerogatives and jurisdictions" of others.[108] My conclusion that Mock has adequate remedies at law in mandamus suffices only to divest this Court of subject matter jurisdiction unless and until the Superior Court, as the only tribunal with the jurisdiction to say so with finality, determines that mandamus will not issue because the violations are discretionary or nonministerial.[109]

I take each of Mock's first five grievances in turn.

### a. The Division's Investigation

Mock's first two grievances assert the Division violated his rights under LEOBOR Section 9200(c). He alleges its "investigation was initiated and continued in violation of [Mock]'s rights under LEOBOR and the fruits of that improper investigation created and[] tainted the charges lodged against [Mock], and tainted ensuing proceedings[.]"[110] He also contends the Division "affirmatively created

---

[108] *State ex rel. Biggs v. Corley*, 172 A. 415, 420 (Del. 1934); *Bramble v. Dannemann*, 1980 WL 6366, at *3 (Del. Ch. Jan. 10, 1980) (dismissing an action with an adequate remedy in mandamus for lack of subject matter jurisdiction).

[109] Unlike the defendants in *Bramble v. Dannemann*, the Division has not claimed that mandamus is the proper remedy, and so would not be estopped from arguing it is not the correct remedy in Superior Court. *See Mason v. Bd. of Pension Trs.*, 468 A.2d 298, 300 (Del. Super. 1983) (describing *Bramble*'s jurisdictional volley from Chancery to Superior Court and back to Chancery (citing *Bramble*, 1980 WL 6366, and *Bramble v. Dannemann*, No. 80C-FE-84 (Del. Super. Apr. 30, 1982) (ORDER))).

If the Superior Court, in its exclusive discretion, declines to issue a writ because the violations are technical, that is an adverse and final merits conclusion under an adequate remedy at law by a Court with competent jurisdiction. *See supra* notes 90–91 and accompanying text.

[110] Am. Compl. ¶ 64(a); *id.* ¶¶ 16–18, 26.

28

official written reports, after Mock was already under formal investigation, and used those documents to create and lodge 'false official report' charges against [] Mock" in violation of his rights under 11 *Del. C.* § 9200(c).[111]

LEOBOR Section 9200(c) "sets forth in twelve numbered subsections procedures which govern any such investigation or questioning."[112]  Mock's complaints implicate subsections (4), (7), (9) and (10):

> (c) Whenever a law-enforcement officer is under investigation or is subjected to questioning for any reason which could lead to disciplinary action, demotion or dismissal, the investigation or questioning shall be conducted under the following conditions:
> . . .
>
> (4) The law-enforcement officer under investigation shall be informed in writing of the nature of the investigation prior to being questioned.
> . . .
>
> (7) A complete record, either written, taped or, if taped, transcribed as soon as practicable, shall be kept of all interviews held in connection with the administrative investigation upon notification that substantial evidence exists for seeking an administrative sanction of the law-enforcement officer.  A copy of the record shall be provided to the officer or the officer's counsel at the officer's expense upon request.
> . . .

---

[111] *Id.* ¶ 64(b) (emphasis omitted); *id.* ¶ 27.

[112] *In re Massey*, 2002 WL 1343828, at *1; 11 *Del. C.* § 9200(c).

(9) Upon request, any officer under questioning shall have the right to be represented by counsel or other representative of the officer's choice, who shall be present at all times during the questioning unless waived in writing by the investigated officer. The questioning shall be suspended for a period of time if the officer requests representation until such time as the officer can obtain the representative requested if reasonably available.

(10) An officer who is charged with violating any departmental rules or regulations, or the officer's representative, will be provided access to transcripts, records, written statements, written reports, analyses and video tapes pertinent to the case if they are exculpatory, intended to support any disciplinary action or are to be introduced in the departmental hearing on the charges involved. Upon demand by the officer or counsel, they shall be produced within 48 hours of the written notification of the charges.[113]

"The requirements for disciplinary investigations [under LEOBOR Section 9200(c)] are specific and do not leave room for discretion."[114] To my eye, Mock's complaints about the flaws in the Division's investigation amount to ministerial violations of Section 9200(c), such that Mock has an adequate remedy at law in mandamus.

### b. The Trial Board's Evidentiary Procedures

Mock's third and fourth grievances allege the evidence on which the Trial Board entered its judgment was "obtained, received or admitted into evidence which violated Plaintiff's rights established by [the] Constitution and by LEOBOR[.]"[115]

---

[113] 11 *Del. C.* §§ 9200(c)(4), (7), (9)–(10).

[114] *Smith*, 1999 WL 1225250, at *12 & n.17.

[115] Am. Compl. ¶ 64(c); *id.* ¶ 64(d).

This language tracks LEOBOR Section 9206.[116] That Section recursively incorporates the officer's constitutional due process rights and the rest of LEOBOR:

> No evidence may be obtained, received or admitted into evidence in any proceeding of any disciplinary action which violates any of the rights established by the United States Constitution or Delaware Constitution or by this chapter. The tribunal may not enter any judgment or sustain any disciplinary action based on any evidence obtained in violation of the officer's rights as contained in this chapter.[117]

Mock's third grievance does not specify how or when his constitutional rights were violated—he amended his initial complaint to remove his claims under 43 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution.[118] His claim about how the Division obtained and submitted evidence alleges only that the Division violated Section 9206's umbrella obligations by in turn violating Section 9200(c).[119] Similarly, Mock's fourth grievance contends the Division violated its duty to enter judgment based on compliant evidence by relying on evidence collected and submitted in violation of Section 9200(c).[120]

---

[116] 11 *Del. C.* § 9206.

[117] *Id.*

[118] *See, e.g.*, Am. Compl. ¶¶ 16–18, 26; *see also supra* note 40.

[119] Am. Compl. ¶¶ 16–18, 26, 64(c).

[120] *Id.* ¶¶ 16–18, 26, 64(d). Mock does not allege that he offered permissible evidence into the record and the Trial Board declined to admit it. The Trial Board has discretion as to which probative and non-violative evidence it may or may not admit under a standard invoking reasonableness; such a violation would be discretionary and not amenable to mandamus. 11 *Del. C.* § 9205(c) ("Evidence which possesses probative value commonly

While Mock alleges the Division's evidentiary procedures violated Section 9200(c), he does not allege which subsection. As best I can tell, these grievances map on to Sections 9200(c)(4), requiring an officer to "be informed in writing of the nature of the investigation prior to being questioned," and 9200(c)(10), requiring that an officer charged with a violation be provided access to evidentiary materials "if they are exculpatory, intended to support any disciplinary action or are to be introduced in the departmental hearing on the charges involved." I believe these obligations are nondiscretionary and ministerial, such that mandamus is the appropriate remedy for the Division's alleged failure to perform them.[121]

As Mock concedes, his fifth grievance is ministerial and eligible for mandamus.[122] And so, Mock's first five grievances have an adequate remedy at law in mandamus; this Court lacks subject matter jurisdiction to adjudicate them.

---

accepted by reasonable and prudent persons in the conduct of their affairs shall be admissible in evidence and given probative effect."); *see Defeo v. Williams*, 1999 WL 1442003, at *2 (Del. Super. Nov. 5, 1999) (finding mandamus inapplicable to compel an official to exercise their discretion in determining whether access was "reasonable and appropriate").

[121] *State ex rel. Abbott v. Calio*, 860 A.2d 811, 2004 WL 2520906, at *1 (Del. 2004) (TABLE) (quoting *Guy v. Greenhouse*, 637 A.2d 827 (Del. 1993)).

[122] Am. Compl. ¶ 64(e); D.I. 47 at 15; D.I. 51 at 7.

**B.** **Mock Failed To Plead That Discretionary Administrative Decisions Are Actionable In Equity.**

Mock's remaining allegations do not neatly map on to LEOBOR, let alone ministerial duties mandated by LEOBOR. He asserts "the Trial Board's decision failed to make legally sufficient, evidentiary-based, findings of facts and conclusions of law upon the substantiated charges, and neglected to address the unsubstantiated charges at all;" and the Division "allowed Plaintiff's administrative appeal to proceed with the improper dual representation of allowing the Deputy Attorney General who advised the Trial Board and drafted their decision, to appear as counsel in opposition to Plaintiff's appeal of that same decision."[123] These final two grievances take issue with more discretionary administrative decisions, from which Mock has no statutory right of appeal. For these issues, I conclude the administrative procedure Mock has already received is itself adequate because Mock has failed to plead the deficiencies were unconstitutional, arbitrary, or capricious.

While the parties briefed the availability of a writ of certiorari for these violations, I conclude it does not offer an adequate remedy at law here because Mock has not pled the Trial Board, Superintendent, or Secretary "(a) exceeded its jurisdiction, (b) committed errors of law, or (c) proceeded irregularly."[124] And

---

[123] Am. Compl. ¶¶ 64(f)–(g).

[124] *395 Assocs.*, 2006 WL 2021623, at *3 (citations omitted).

neither LEOBOR nor the APA provide for a statutory right of judicial review of law enforcement officers' disciplinary proceedings.[125]  Mock contends that this dearth of options for additional review means he has no adequate remedy at law and the Court of Chancery must exercise subject matter jurisdiction over what amounts to an appeal.

The inquiry is more nuanced than Mock suggests.  While it is true that "[e]quity will not suffer a wrong without a remedy,"[126] the fact that the General Assembly chose not to afford Mock a statutory right of appeal does not mean Mock is lacking an adequate remedy at law, such that he can prevail upon this Court.[127] An administrative process may itself have afforded an adequate remedy as long as its machinations or ultimate decision was not unconstitutional, an abuse of discretion, or arbitrary and capricious.[128]  Ultimately, "whatever jurisdiction the court has to review an administrative action where no statutory or constitutional basis to do so exists remains largely discretionary in nature.  Unless the petitioner can show substantial entitlement to relief from arbitrary, or capricious, or unlawful

---

[125] *Haden*, 2014 WL 2964081, at *2 .

[126] *In re Del. Pub. Sch. Litig.*, 239 A.3d 451, 511 (Del. Ch. 2020) (citation omitted).

[127] *Fam. Ct.*, 320 A.2d 777 (holding availability of full, fair and complete legal remedy, such as a writ, when there is no right of appeal, will deprive the Court of Chancery of jurisdiction).

[128] *See Choma*, 300 A.2d at 41 (citations omitted).

34

actions, the court will not exercise that discretion."[129]  Mock has failed to show such entitlement.

### 1. Mock's Claims Do Not Trigger Equitable Review of Due Process Claims.

Mock argues that he asserts due process claims that find no home in courts at law, and so this Court must exercise jurisdiction over his claims like it did over the due process claims in *Holland v. Zarif*.[130]  Mock's due process claims are cabined to the statutory due process under LEOBOR:  he does not explicitly assert any constitutional violations, and in fact removed them when he filed his Amended Complaint.[131]  Mock's invocations of due process do not resemble the extraordinary claim in *Holland* that moved this Court to afford subject matter jurisdiction.

---

[129] *Am. Fed'n of State, Cty., & Mun. Emps., AFL-CIO, Council 81, Loc. 439 v. Univ. of Del.* (*AFSCME*), 2009 WL 2005366, at *3 (Del. Ch. July 1, 2009); *accord O'Neill v. Town of Middletown*, 2006 WL 205071, at *14 (Del. Ch. Jan. 18, 2006) ("Therefore, where challenged agency conduct . . . falls within the 'gap' of the state APA—no judicial review is available (unless otherwise provided by statute, constitutional mandate, or taxpayer standing).").

[130] D.I. 47 at 31–32 (discussing *Holland v. Zarif*, 794 A.2d 1254 (Del. Ch. 2002)).

[131] *See, e.g.*, Am. Compl. ¶ 51 ("[The Secretary] did not address, except to disregard, any of Cpl. Mock's many legal and due process arguments on appeal (*e.g.*[,] LEOBOR violations, lack of findings, evidentiary errors, etc.) but instead set forth his own feelings and conclusions that termination was appropriate."); *id.* ¶¶ 16–18 (describing the rights afforded Mock in LEOBOR Section 9200(c), "including disclosure of the nature of the investigation, the right to consult with and be represented by legal counsel, . . . and the creation of a verbatim record of the questioning" and how Mock was questioned by a superior officer without receiving these protections); *id.* ¶ 26 ("It is undisputed that Cpl. Mock had not been afforded any of the rights set forth at 11 *Del.C.* §9200(c) on October 21–22, 2017, at the time the Martin report was approved or on October 31, 2017, when the Earle PIP review was signed and submitted."); *id.* ¶ 42 (alleging the Trial Board's

In *Holland*, the plaintiff attempted to file a gender discrimination charge under Delaware's Discrimination in Employment and Handicapped Persons Employment Protections Act (the "Act") after she was fired by her employer allegedly "in order to appease [the employer's] jealous wife."[132] After the Delaware Department of Labor refused to allow the plaintiff to file a charge, allegedly without giving her a written explanation of the Department's refusal as required by statute, the plaintiff filed a complaint in the Court of Chancery.[133] One of the defendants moved to dismiss for lack of subject matter jurisdiction, asserting the case belonged in

---

"'Findings of Fact' consisted of a 3-page hodgepodge list of 'facts' (of varying accuracy to the record) but contained no actual commentary or analysis by the Board about them (no 'findings'). No findings or analysis appears as to how the trial board believed the evidence met the criteria of the various Rules and Regulations alleged for each of the 10 counts charged by [Internal Affairs]" in violation of LEOBOR Section 9207); *id.* ¶ 43 ("The trial board's 'Conclusions of Law' section also contains no conclusions of law whatsoever. This part of the decision consisted of a bare statement that certain Rules and Regulations were violated, and then simply recited the verbiage of each Rule and Regulation." (emphasis omitted)); *id.* ¶ 44 ("[F]or unknown reasons, the Board completely omitted any reference to fact that the 3 counts (including one of the counts of falsification) had been unsubstantiated, per the verbal ruling at the conclusion of the 3-day hearing."); *id.* ¶ 45 ("The Superintendent failed to make any findings of his own, and failed to distinguish comparator Troopers—evidence of which was presented in the record—who had engaged in more culpable conduct in the past, and had been permitted to retain their employment."); *see supra* note 40; *cf. Vick v. Ellingsworth*, 504 A.2d 573, 1985 WL 14158, at *2 (Del. 1985) (TABLE) ("Vick has not alleged any specific violation of his due process rights, and therefore has not met the burden of establishing beyond mere conjecture that his due process rights have been violated." (citing *U.S. v. Valenzuela-Bernal*, 458 U.S. 858 (1982))).

[132] *Holland*, 794 A.2d at 1256.

[133] *Id.*

Superior Court.[134]  The APA did not provide for judicial review for any of the Department of Labor's decisions, and the Court found that the General Assembly did not provide a mechanism for judicial review of Department-level decisions on the viability of discrimination charges.[135]

Then-Vice Chancellor Strine focused on the "serious Due Process Clause implications that would arise were he to find that the Department has the unreviewable discretion to refuse to accept a discrimination charge or to dismiss a charge."[136]  Looking to federal courts' interpretation of other states' anti-discrimination statutes, this Court recognized that discrimination complainants have a property interest in their causes of action of which they cannot be deprived without due process.[137]  The Court explained that

---

[134] *Id.* at 1256–57.

[135] *Id.* at 1258, 1264.

[136] *Id.* at 1265.

[137] *Id.* at 1265–66 (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429–31 (1982), and *Bennett v. Tucker*, 827 F.2d 63, 70 (7th Cir. 1987)).

[a] refusal by the Department of a charge deprives a claimant of her cause of action with finality. A decision by the Department of that kind is an important one, which affects property rights of a substantial nature. It seems to me to be doubtful that the Due Process Clause permits such an important right to be taken from a claimant by line employees of a Department, who act without a hearing, without necessarily obtaining formal legal advice, without producing a written decision, and without being subject to judicial review.[138]

While "the General Assembly's failure to address the method for obtaining judicial review of Departmental Refusal or Dismissal [D]ecisions can be read as evidencing its view that such decisions should be beyond the purview of the courts," the Court concluded that "the best reading of the Act" was that it "d[id] not preclude judicial review of" the discretionary decisions to "refuse to allow the filing of a discrimination charge" or "accept a charge and dismiss it by written decision."[139] To read the Act as precluding judicial review of a due process claim in the deprivation of a property interest would be to threaten the Act's viability as unconstitutional.[140]

The *Holland* Court determined that a writ of mandamus would not offer an adequate remedy at law to the plaintiff's claims because the Department of Labor does not have a ministerial duty to approve complainants' discrimination charges; its decision is quintessentially discretionary.[141] Consequently, in the absence of an

---

[138] *Id.* at 1266–67.

[139] *Id.* at 1256–57, 1267, 1269.

[140] *Id.* at 1267.

[141] *Id.* at 1269.

adequate remedy at law, and the "serious constitutional issue[s]" the complaint raised regarding the Department's depriving discrimination complainants of their property interests without due process, the Court determined equitable review was appropriate to examine whether the "agency's decision was an abuse of discretion, in light of all the factual and legal circumstances relevant to the decision."[142]

     This case is distinguishable from *Holland*. Delaware courts recognize

---

[142] *Id.* at 1267, 1270. This sentiment is consistent with Chancellor Allen's view in *Burge v. City of Dover*. 1987 WL 12311, at *9 ("A court, in my opinion, is more justified in granting affirmative relief on the thin record of a preliminary injunction when the wrong alleged involves infringement of important substantive rights. Thus, a dismissal from governmental employment that resulted from the exercise of protected speech, or the exercise of political rights such as the right to vote, or that results from racial discrimination, would more readily be remedied at the preliminary injunction phase than would the procedural right to be heard before otherwise permissible action is taken. To so observe is not to demean the importance of procedural protections, but simply to recognize that certain rights are even more fundamental in our scheme of government. Were plaintiff separated from his pay check because he spoke out against a popular position or because of his race or political affiliation, a close calculation of irreparable injury would probably be unnecessary." (citing *Elrod v. Burns*, 427 U.S. 348 (1976))); *O'Neill*, 2006 WL 205071, at *14 n.124 ("The Court in *Couch* also noted that a right to review could occur if the decision of the agency was 'motivated by an impermissible consideration; or was otherwise a violation of plaintiffs' rights to due process of law.' This is in accord with the Court's analysis here, providing for a right to review where constitutional claims are set forth (and standing is satisfied)." (internal citations omitted) (quoting *Couch v. Delmarva Power & Light Co.*, 593 A.2d 554, 561 (Del. Ch. 1991))).

the requirements of the procedural process due in employment termination cases as follows: (1) clear notice of the charge being considered; (2) a reasonable time interval to marshal facts and evidence to respond; (3) an explanation of the evidence supporting the charges; and (4) an opportunity to present plaintiff's side of the case in a manner which will allow a decision maker to weigh both sides.[143]

Mock received this base-level due process. The plaintiff in *Holland* did not. And Mock's vocation subjected the termination of his employment to LEOBOR, which affords far more due process than the average American resident is entitled to receive for the loss of a job.[144] The Division terminated Mock after: (i) an investigation purportedly under LEOBOR; (ii) proceedings before and a recommendation by the Trial Board, purportedly under LEOBOR; (iii) a decision by the Superintendent; and (iv) an appeal before and (v) a decision by the Secretary.[145] He had an adversarial

---

[143] *Smith*, 1999 WL 1225250, at *8 (citing *Barber v. City of Lewes*, 1997 WL 127951, at *13 (Del. Super. Jan. 31, 1997)); *accord Sapienza v. Del. State Univ. Police Dep't*, 2020 WL 4299137, at *2 (Del. Super. July 24, 2020).

[144] *Knox*, 1995 WL 339096, at *3 ("The Court rejects Defendants' contention that the Law-Enforcement Officers' Bill of Rights only guarantees police officers the same rights and privileges as those of private citizens. Eleven *Del. C.* Chapter 92 provides law-enforcement officers with enhanced procedural due process safeguards. In a typical termination of employment situation, an employee is entitled to notice and an opportunity to be heard." (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985), and *Burge*, 1987 WL 12311)).

[145] Am. Compl. ¶¶ 5, 2, 28, 31–38; Ans. ¶¶ 2, 5, 28, 31–32, 34–38. Under 29 *Del. C.* § 8203(6), only the Secretary is permitted to terminate "employees of the Department" of Safety and Homeland Security, and they cannot delegate that power. While the General Assembly does not include a definition of "employees" in Chapter 82 of Title 29, some courts have found "employees" to include police officers in the Delaware State Police. *Stevens v. Steiner*, 1987 WL 9599, at *1–2 (Del. Super. Apr. 13, 1987); *Taylor v. Div. of State Police*, 2004 WL 1368847, at *3 (D. Del. June 15, 2004), *aff'd*, 122 F. App'x 598

40

hearing in front of the Trial Board, whose impartiality Mock has not challenged, resulting in a written decision.[146]  Mock also received a second adversarial hearing in front of the Secretary, whose impartiality Mock has not challenged, resulting in a second written decision.[147]  As best I can tell, LEOBOR's constitutionality will not be threatened if Mock's alleged violations are not heard by this Court; Mock certainly does not argue that it will be.  I conclude that to the extent Mock has asserted a due process claim, it does not raise the concerns that led this Court to exercise its equitable jurisdiction in *Holland*.

**2.** **Mock Has Not Pled The Trial Board Or Superintendent Were Arbitrary, Capricious, Or Unlawful.**

Mock's sixth grievance takes aim at the Trial Board and Superintendent. Again, he lacks a statutory basis for such claims against actors in his administrative process, and the claims are not constitutional in nature.  So, to support this Court's discretionary subject matter jurisdiction to review administrative claims, he must show substantial entitlement to relief from arbitrary, capricious, or unlawful

---

(3d Cir. 2005).  Plaintiff does not accuse the Trial Board or Superintendent of exceeding their jurisdiction, so I will not address the issue further.

[146] Compl. at Ex. B.

[147] Compl. at Ex. E.

actions.[148]  Mock does not allege that the Division's actions were arbitrary, capricious, or unlawful.  Nor has he pled that the recommendations or decisions by the Trial Board or Superintendent were arbitrary and capricious, an abuse of discretion, or unconstitutional.  Mock's briefing attempts to make these arguments, but "[a]rguments in briefs do not serve to amend the pleadings."[149]

And even if Mock had invoked the standard to secure this Court's jurisdictional review of a statutory administrative decision, the facts pled would not meet that standard.  Mock's sixth grievance alleges "the Trial Board's decision failed to make legally sufficient, evidentiary-based, findings of facts and conclusions of law upon the substantiated charges, and neglected to address the unsubstantiated charges at all[.]"[150]  "This Court may find an action arbitrary if it was 'unconsidered' or 'taken without consideration of and in disregard of the facts and circumstances of

---

[148] *Holland*, 794 A.2d at 1267 (finding equitable review appropriate in the absence of any other right to judicial review when "the unavailability of such review would raise a serious constitutional question"); *AFSCME*, 2009 WL 2005366, at *3 ("[T]here is little to suggest that the decision at issue was in any regard arbitrary or capricious, or the result of an abuse of discretion.  Thus, the circumstances in *Holland v. Zarif* justifying the use of this court's equitable power to review an agency's action are completely lacking in this case.").

[149] *In re MeadWestvaco S'holder Litig.*, 168 A.3d 675, 688 n.68 (Del. Ch. 2017) (citation and internal quotations omitted).

[150] Am. Compl. ¶ 64(f); *see also id.* ¶¶ 36, 41–45, 60.

the case.'"[151]  The present record reflects that the Trial Board did base its recommendation on evidence presented at its hearing.[152]

In addition, the Trial Board is "a statutory fact-finding body and is not authorized to resolve questions of law."[153]  Mock does not have substantial entitlement to "legally sufficient . . . conclusions of law" because the Trial Board does not have the authority to make them in the first place.  Finally, Mock points to no authority indicating that the Trial Board had to address charges it found to be unsubstantiated in its written recommendation after notifying Mock verbally at the hearing of its findings in that regard.[154]  Both the Trial Board and the Superintendent label the charges they address as "substantiated," implicitly acknowledging that the omitted charges were not substantiated.[155]  Mock simply seeks more process; he fails

---

[151] *Save Our Cty., Inc. v. New Castle Cty.*, 2013 WL 2664187, at *9 (Del. Ch. June 11, 2013) (quoting *Willdel Realty, Inc. v. New Castle Cty.*, 270 A.2d 174, 178 (Del. Ch. 1970), *aff'd*, 281 A.2d 614 (Del. 1971)), *aff'd sub nom. Barley Mill, LLC v. Save Our Cty., Inc.*, 89 A.3d 51 (Del. 2014).

[152] Compl. at Ex. B; *Citizens' Coal., Inc. v. Sussex Cty. Council*, 2004 WL 1043726, at *2 (Del. Ch. Apr. 30, 2004) ("The record demonstrates that SCC's decision to rezone complied with Delaware Zoning Statutes and the Comprehensive Plan and was reasonably based on findings of fact and conditions that were supported by evidence presented at a proper hearing.  Thus, it was not arbitrary and capricious."), *aff'd sub nom. Citizens' Coal., Inc. v. Cty. Council of Sussex Cty.*, 860 A.2d 809 (Del. 2004).

[153] *Brittingham I*, 2011 WL 2650691, at *4 (citing 11 *Del. C.* § 9207).

[154] Am. Compl. ¶ 44.

[155] Compl. at Ex. A; Compl. at Ex. B.

to plead that what he received was arbitrary, capricious, or unconstitutional.[156] Mock

has failed to secure this Court's subject matter jurisdiction over his administrative

claims against the Trial Board and the Superintendent.

### 3. Mock Has Not Pled The Secretary's Decision Was Arbitrary, Capricious, Or Unlawful.

Mock's seventh and final grievance alleges the Division "allowed Plaintiff's

administrative appeal to proceed with the improper dual representation of allowing

---

[156] *Holland*, 794 A.2d at 1267; *AFSCME*, 2009 WL 2005366, at *3.

Mock also makes a conclusory claim, not incorporated into his counts, that the Superintendent "failed to make any findings of his own, and failed to distinguish comparator Troopers—evidence of which was presented in the record—who had engaged in more culpable conduct in the past, and had been permitted to retain their employment." Am. Compl. ¶¶ 45, 64(f). But Mock does not allege how his case differed from those "comparator Troopers." *Cf. Bramble*, 1980 WL 6366, at *1 ("The complaint charges that the action of the Board in denying the service connected disability pension was arbitrary and capricious. The basis for these charges is twofold. First, it is alleged that the evidence offered by the plaintiff was basically uncontradicted. Second, the complaint refers to two other former State Police members who, in the past, were awarded the 75 per cent pension as a result of being compelled to retire for medical reasons which were almost identical to that which forced the plaintiff's retirement."). Nor does he cite any authority indicating the Superintendent should make his own findings of fact. Indeed, as Mock explains the appellate process: "Following the issuance of the trial board decision, the DSP Superintendent is to review [the Trial Board's] decision, taking into consideration other specified factors, and then issue his own decision ('Superintendent's Decision') as to what penalties he recommends be imposed in a given case." Am. Compl. ¶ 37. Mock is asking for more process than he has acknowledged is available, and has failed to plead a cognizable claim against the Superintendent. Indeed, the Superintendent is not a party to this action. This may be because the Superintendent enjoys sovereign immunity. *Janowski v. Div. of State Police Dep't of Safety & Homeland Sec.*, 2009 WL 537051, at *3 (Del. Super. Feb. 27, 2009) ("Considering the enabling statutes of the Department of Homeland Security and the Delaware State Police, the General Assembly does not give any appearance of an intent to waive sovereign immunity. There are no provisions in those enabling statutes creating a right to sue and be sued relative to the Delaware State Police." (citations omitted)), *aff'd*, 981 A.2d 1166 (Del. 2009).

the Deputy Attorney General who advised the Trial Board and drafted their decision, to appear as counsel in opposition to Plaintiff's appeal of that same decision."[157] This decision was made by the Secretary. The defendant here, the Division, was a litigant in Mock's appeal before the Secretary. The Secretary, as the adjudicator, was the one who "allowed Plaintiff's administrative appeal to proceed."[158] Mock's counsel sent a letter dated August 17, 2018 to the Secretary objecting to the Division's choice of counsel.[159] The Secretary replied by letter dated September 28: "Ms. Ballard's objection is noted for the record. The hearing will move forward as scheduled."[160]

The Secretary is not a party to this action, so it is unclear how this claim can proceed. From a jurisdictional standpoint, like his claims about the Trial Board and Superintendent, Mock did not claim that the Secretary's decision was arbitrary and capricious, an abuse of discretion, or unconstitutional.[161] Mock asserted the Division's choice of counsel was improper, but impropriety is not necessarily

---

[157] Am. Compl. ¶ 64(g).

[158] *Id.*

[159] Compl. Ex. C.

[160] Compl. Ex. D.

[161] *Holland*, 794 A.2d at 1267 (finding equitable review appropriate in the absence of any other right to judicial review when "the unavailability of such review would raise a serious constitutional question"); *AFSCME*, 2009 WL 2005366, at *3 (distinguishing *Holland* where "there [wa]s little to suggest that the decision at issue was in any regard arbitrary or capricious, or the result of an abuse of discretion").

unconstitutional, arbitrary, or capricious. Mock's grievance about the Division's counsel fails to secure this Court's subject matter jurisdiction.

### C. Mock's Declaratory Judgment Count Does Not Anchor Equitable Jurisdiction.

Having concluded that the alleged failings in the procedural protections Mock has already received are either remediable by mandamus, or insufficiently unconstitutional, arbitrary, or capricious to secure this Court's subject matter jurisdiction, I turn to Mock's remaining cause of action. His first count is for "Declaratory judgment—Violation of 11 *Del. C.* Ch. 92 [LEOBOR]."[162] The Declaratory Judgment Act "does not increase or alter the jurisdiction of any court, nor does it alter the jurisdictional relationship between the Superior Court and the Court of Chancery."[163] Accordingly, the Court "must ascertain whether there is an independent basis for jurisdiction."[164] Mock expands upon this count in his prayer for relief, which asks this Court to

---

[162] Am. Compl. ¶¶ 52–62.

[163] *Democratic Party of State v. Dep't of Elections for New Castle Cty.*, 1994 WL 555405, at *3 (Del. Super. Sept. 6, 1994) (citing *Spencer v. Smyrna Bd. of Educ.*, 547 A.2d 614, 615 (Del. Super. 1988); *Heathergreen Commons Condo. Ass'n. v. Paul*, 503 A.2d 636, 642 (Del. Ch. 1985)), *aff'd*, 650 A.2d 1305 (Del. 1994).

[164] *Smith*, 1999 WL 1225250, at *10 (citing *Democratic Party*, 1994 WL 555405, at *3).

[i]ssue a declaratory judgment that Defendant's termination of Plaintiff's employment as a Delaware State Trooper was and is unenforceable, as it was obtained in derogation of Plaintiff's statutory and due process rights, and other rights secured by Delaware law, as described herein, and that, as a result of such violations, Defendant should be estopped from further proceedings against him in this matter[.][165]

This request seeks a declaration that the Division's termination decision was improper and is unenforceable because it was based on violations of Mock's rights under LEOBOR. This relief, if available at all, is available at law.[166] The mention of estoppel does not change this simple characterization. The Prayer for Relief is the first and only time Mock mentions estoppel in the Amended Complaint, and Mock does not specify whether he is seeking declaratory relief based on a theory of promissory estoppel or equitable estoppel.[167] As explained, this Court does not have

---

[165] Am. Compl. at 23.

[166] *Clark v. Teeven Hldg. Co.*, 625 A.2d 869, 879 (Del. Ch. 1992) ("The power to grant declaratory relief has been granted to both this Court and the Superior Court." (citing 10 *Del. C.* § 6501)); *see Mason*, 468 A.2d at 299–300 (concluding a declaratory judgment action is not available to resolve a controversy where a board has acted definitively under a statutory regime that offers no right of appeal).

[167] Even so, Delaware courts typically do not apply the doctrines of promissory or equitable estoppel against the government. *See, e.g.*, *Port Penn Hunting Lodge Ass'n v. Meyer*, 2019 WL 2077600, at *9 (Del. Ch. May 9, 2019) ("The Delaware Supreme Court has foreclosed promissory estoppel claims against government entities except in limited circumstances, such as employment." (citing *Harmon v. State*, 62 A.3d 1198, 1201 (Del. 2013))), *aff'd*, 222 A.3d 1044 (Del. 2019); *Salem Church (Del.) Assocs. v. New Castle Cty.*, 2006 WL 4782453, at *12 (Del. Ch. Oct. 6, 2006) ("Application of the doctrine of equitable estoppel to governmental actions is rare. Generally, courts will not depart from their traditional cautiousness in applying the doctrine unless there are *exceptional* circumstances which make it *highly* inequitable or oppressive to enforce the regulations." (footnotes and internal

the jurisdiction to grant Mock the injunctions he seeks and therefore, does not have the "independent basis for jurisdiction over the cause of action" it needs to issue declaratory relief.[168] Mock's first cause of action does not seek equitable relief in the absence of an adequate legal remedy.

***

Mock's claims may be remedied in the Superior Court by the declaratory judgment he seeks here and a writ of mandamus. This duality may, at first blush, appear to threaten mandamus's adequacy as a remedy: "[m]andamus is not the appropriate remedy unless it will settle the entire controversy."[169] But the Superior Court has held that a plaintiff may seek a declaratory judgment and a writ of mandamus in the same case, and that granting both remedies does not disqualify the adequacy of the other.[170]

---

quotation marks omitted) (quoting *Miller v. Bd. of Adjustment of Dewey Beach*, 521 A.2d 642, 646 (Del. Super. 1986))).

[168] *Smith*, 1999 WL 1225250, at *10 (citing *Democratic Party*, 1994 WL 555405, at *3).

[169] *Nathan*, 317 A.2d at 114 (citing 52 AM. JUR. 2D *Mandamus* § 37 (1970), and *Lakeland Joint Sch. Dist. Auth. v. Sch. Dist. of Twp. of Scott*, 200 A.2d 748 (Pa. 1964)).

[170] *Moore v. Stango*, 1992 WL 114062, at *1 (Del. Super. May 8, 1992) ("As to the question of declaratory judgment, the issue is whether Moore may seek a declaratory judgment and writ of mandamus within the same proceeding. My answer is in the affirmative. The issue of whether Adams is a qualified candidate is a matter subject to declaratory judgment. However, if he is determined to be unqualified, that determination in and of itself does not provide adequate relief. Only a writ of mandamus will provide adequate relief.").

**III. CONCLUSION**

Mock's grievances under LEOBOR and about the process by which he was terminated have adequate remedies at law in the administrative process he has already received, and in mandamus. The Superior Court can also grant the declaratory judgment he seeks. This Court therefore lacks subject matter jurisdiction. This matter is dismissed for lack of subject matter jurisdiction unless Mock applies for a transfer to the Superior Court under 10 *Del. C.* § 1902.

49